MICHAEL GERITY, BAR NO. 015750
ISRAEL & GERITY, PLLC
202 EAST EARLL DRIVE, SUITE 440
PHOENIX, ARIZONA 85012
TELEPHONE: (602) 274-4400
FACSIMILE: (602) 274-4401
MGERITY@IG-LAW.COM

ATTORNEYS FOR PLAINTIFF

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Surgenex, LLC., an Arizona limited liability company, | No. |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **1. FALSE ADVERTISING AND UNFAIR COMPETITION UNDER THE LANHAM ACT AND ARIZONA LAW;** |
| Regenerative Sciences, LLC, a Colorado limited liability company doing business as Regenexx; Christopher Centeno, M.D., and Jane Doe Centeno, husband and wife; Mark Conliffe, M.D., and Jane Doe Conliffe, husband and wife; Interventional Orthopedics Foundation, a Colorado corporation; John and Jane Does 1-97, and Black and White Companies 1-97, | **2. COMMON LAW UNFAIR COMPETITION;** |
| | **3. TRADE LIBEL AND COMMERCIAL DISPARAGEMENT;** |
| | **4. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; and** |
| | **5. COPYRIGHT INFRINGEMENT** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Surgenex, LLC (hereinafter "Plaintiff"), for its Complaint against the Defendants, alleges as follows:

## NATURE OF THE CASE

1.     This is a civil action for false advertising, unfair competition, trade libel and disparagement, interference with prospective economic advantage, and copyright infringement.

2.     The false advertising, unfair competition, libel, disparagement and interference counts relate to intentionally false and misleading descriptions, representations and omissions of fact about the products provided by both Plaintiff

and Defendant Regenerative Sciences, LLC (hereinafter "Regenexx"). Without limitation and as detailed herein, Defendants falsely represented and described the products of Plaintiff, falsely represented and described the products of Regenexx, and falsely represented Defendant Interventional Orthopedics Foundation (hereinafter "IOF") as being an independent entity offering independent and unbiased corroboration of Defendants' representations. Defendants also engaged in communications with Plaintiff under false and intentionally misleading circumstances, improperly recorded the communications, and then published portions of those communications in a false and misleading manner. All of this conduct was designed to improperly boost the sales of Regenexx and intentionally interfere with Plaintiff's business.

3.     The copyright counts relate to infringement under the United States Copyright Act to combat the willful and intentional infringement of Plaintiff's creative works. Defendants illegally reproduced and distributed Plaintiff's copyrighted materials and, upon information and belief, continue to do the same.

4.     Plaintiff seeks injunctive relief, statutory or actual damages, punitive damages, an award of costs and attorneys' fees, and other relief.

**THE PARTIES**

5.     Plaintiff Surgenex, LLC, is a limited liability company organized and existing under the laws of the State of Arizona, with its principal place of business at 15444 North 76th Street, Building C110, Scottsdale, AZ 85260.

6.     At all times relevant, and upon information and belief, Regenerative Sciences, LLC, was a Colorado limited liability company doing business as Regenexx, with its principal place of business at 403 Summit Blvd., Suite 201, Broomfield, CO 80021.

2

7.     At all times relevant, and upon information and belief, Defendants Christopher Centeno, M.D., and Jane Doe Centeno (hereinafter "Centeno"), were a married couple residing in Boulder, Colorado.  Defendant Centeno's actions outlined below were performed in furtherance of his marital-community interests.

8.     At all times relevant, and upon information and belief, Defendants Mark Conliffe, M.D., and Jane Doe Conliffe (hereinafter "Conliffe"), were a married couple residing in Kentucky.  Defendant Conliffe's actions outlined below were performed in furtherance of his marital-community interests.

9.     At all times relevant, and upon information and belief, Defendant Interventional Orthopedics Foundation was a Colorado non-profit corporation, with its principal place of business at 403 Summit Blvd., Suite 104, Broomfield, CO 80021.

10.    The true names or capacities, whether individuals, corporations, associations or otherwise of defendants John and Jane Does 1 through 97, and Black and White Companies 1-97, are unknown to Plaintiff, who therefore sues said Defendants by fictitious names.  Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants designated herein as such is legally responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injury and damage to Plaintiff as herein alleged.  Plaintiff prays for leave to amend this Complaint so as to allege their true names and capacities as ascertained.

## JURISDICTION AND VENUE

11.    Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (actions arising under the laws of the United States) and 1338 (actions arising under an Act of Congress relating to patents, copyrights, trademarks and joined unfair competition claims) because this action, at least in part, is for violation of the Lanham

3

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

Act, 15 U.S.C. § 1051 *et seq.*, and for copyright infringement under the copyright laws of the United States, 17 US.C. § 101 *et seq.* (the Copyright Act).  Jurisdiction also exists pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court may also have jurisdiction pursuant to 15 U.S.C. § 1121(a) due to the related trademark issues.  This Court has jurisdiction over any Arizona state and common law claims under principles of pendent, ancillary, and supplemental jurisdiction, 28 U.S.C. § 1367.

12.    The exercise of jurisdiction over Regenexx comports with the laws of the State of Arizona and the constitutional requirements of    due    process    because Regenexx transacts business and/or offers to transact business within Arizona, and has engaged in systematic and continuous contacts with the State of Arizona.  Its website has a "Locations" page that lists a location in Phoenix, Arizona.  It has sent or published one or more communications at issue to recipients in this State.  Regenexx has had communications with at least one of Plaintiff's customers, prospective customers, vendors, or other business relations located in Arizona regarding the products of Regenexx and Plaintiff.  Regenexx also maintains an interactive website through which residents of Arizona and other states can communicate with the company, and through which it can publish communications to residents of Arizona and other states.  Moreover, on information and belief, Regenexx has committed, contributed to and/or induced acts of copyright infringement and unfair competition at issue in this action in the State of Arizona.

13.    The exercise of jurisdiction over Centeno comports with the laws of the State of Arizona and the constitutional requirements of due process because Centeno is personally responsible for all actions of Regenexx alleged herein.  He has, upon

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

4

information and belief, personally sent or published one or more communications at issue to recipients in this State, and has personally had communications with at least one of Plaintiff's customers, prospective customers, vendors, or other business relations located in Arizona regarding the products of Regenexx and Plaintiff.  Upon information and belief, Centeno is responsible for all content on the Regenexx interactive website through which residents of Arizona and other states can communicate with the company, and all or most of the blog posts published on that site, including ones making the false representations asserted herein, are personally attributed to Centeno.  Moreover, on information and belief, Centeno has committed, contributed to and/or induced acts of copyright infringement and unfair competition at issue in this action in the State of Arizona.

14.   The exercise of jurisdiction over Conliffe comports with the laws of the State of Arizona and the constitutional requirements of due process because Conliffe personally engaged in the communications with Plaintiff, located in Arizona, under false and intentionally misleading circumstances, improperly recorded the communications, and then distributed, published, or caused to be published portions of those communications in a false and misleading manner.  He has, upon information and belief, personally sent or published one or more communications at issue to recipients in this State, and has personally had communications with at least one of Plaintiff's customers, prospective customers, vendors, or other business relations located in Arizona regarding the products of Regenexx and Plaintiff.  Moreover, on information and belief, Conliffe has committed, contributed to and/or induced acts of copyright infringement and unfair competition at issue in this action in the State of Arizona.

15.   The exercise of jurisdiction over IOF comports with the laws of the State

of Arizona and the constitutional requirements of due process because IOF transacts business and/or offers to transact business within Arizona, namely training and educational services offered to residents of Arizona. It has sent or published one or more communications at issue to recipients in this State. IOF has had communications, either directly or indirectly, with at least one of Plaintiff's customers, prospective customers, vendors, or other business relations located in Arizona regarding the products of Regenexx and Plaintiff. IOF also maintains an interactive website through which residents of Arizona and other states can communicate with the company, and through which it can publish communications to residents of Arizona and other states. Moreover, on information and belief, IOF has committed, contributed to and/or induced acts of copyright infringement and unfair competition at issue in this action in the State of Arizona.

16.     In addition, upon information and belief, personal jurisdiction in this District is proper because each Defendant unlawfully distributed and offered to distribute over the internet copyrighted works for which Plaintiff has exclusive rights in such a manner that the unlawful distribution occurred in every jurisdiction in the United States, including this one. Defendants, therefore, should anticipate being haled into court in this State and in this District.

17.     In the alternative, this Court has personal jurisdiction over non-resident Defendants, if any, under the Arizona long-arm statute because they published their false representations to residents of this District.

18.     Venue is proper in this District under 28 US.C. § 1391(b) and/or 28 US.C. §1400. Upon information and belief, a substantial part of the acts of complained of herein occurred in this District and have had or will have had effect in this judicial District.

6

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ALLEGATIONS COMMON TO ALL COUNTS**

### **Background and Parties**

19.    Plaintiff is, and at all relevant times has been, a leading producer and distributor of amniotic membrane tissue allografts for use in orthopedics, sports medicine, podiatry, and pain management on a nationwide basis.  Plaintiff's primary product is called SurForce, which is an injectable allograft for use by physicians to be injected into the patient's body at the area being treated.

20.    Defendant Regenexx is a direct competitor of Plaintiff, offering procedures wherein cellular tissue allegedly containing stem cells is extracted, concentrated, and then injected by a physician into the patient's body at the area being treated, much in the way that SurForce is injected by a physician.

21.    At relevant times, upon information and belief, Defendant Centeno was the sole member and manager of Defendant Regenexx, and controlled all aspects of its business, including its advertisements, promotional materials, website and blog, as well as all representations made by Regenexx.

22.    At relevant times, upon information and belief, Defendant Mark Conliffe was an owner of a Regenexx clinic, Bodyworks, and controlled all aspects of its business, including its advertisements, promotional materials, website and blog. Conliffe prominently displays the offering of Regenexx products and/or procedures on his clinic's website, and upon information and belief, sells and has sold such products and/or procedures.

23.    At relevant times, upon information and belief, Defendant IOF alleges itself to be an independent, non-profit organization that "provides education and generates awareness" about "interventional orthopedics."  IOF lists its primary function as a non-profit to "educate and serve as a resource to physicians and the

7

public who seek to understand the growing field of interventional orthopedics, which includes the development and availability of regenerative medicine therapies." IOF further claims an intent to "research, discover, measure and analyze clinical data and outcomes that will allow physicians to determine the best practices in interventional orthopedics as well as to promote the standardization of orthobiologic procedures so that outcomes can be accurately measured and compared."

24.     In short, IOF holds itself out to be a fully independent research and educational foundation offering unbiased, research-based and objective scientific information regarding interventional orthopedics, which it then uses to influence doctors and the public in making decisions with regard to treatment and care in these areas.

25.     While IOF claims to be an independent organization, at all relevant times, upon information and belief, Defendant Centeno was the Chairman of the Board of IOF, was one of two listed instructors, and his corporation Centeno Schultz, P.C., has been a primary grant recipient.

26.     Furthermore, while IOF claims to be an independent organization, at all relevant times, upon information and belief, IOF and Regenexx maintained their offices in the same, small building in Broomfield, Colorado.

27.     Furthermore, while IOF claims to be an independent organization, at all relevant times, upon information and belief, it shared or had in common other employees, officers, agents or other representatives of Regenexx.

28.     Upon information and belief, all allegedly independent research conducted by IOF was and is actually conducted by, or was significantly directed, influenced or assisted by, Centeno, Regenexx, or their agents or representatives.

8

29.     Regenexx owns, maintains and/or operates a website, with the direction and under the control of Centeno, at www.regenexx.com, the content of which is incorporated herein by reference.

30.     Regenexx owns, maintains and/or operates a Facebook page, with the direction and under the control of Centeno, at https://www.facebook.com/Regenexx, the content of which is incorporated herein by reference.

31.     IOF owns, maintains and/or operates a website, upon information and belief with the direction and under the control of Regenexx and Centeno, at https://interventionalorthopedics.org, the content of which is incorporated herein by reference.

32.     IOF owns, maintains and/or operates a Facebook page, upon information and belief with the direction and under the control of Regenexx and Centeno, at https://www.facebook.com/iofoundation, the content of which is incorporated herein by reference.

33.     Each of these websites and Facebook pages promotes and markets the products and services of Regenexx, or criticizes and attacks the products and services of the competitors of Regenexx, including Plaintiff, and each is accessible to customers and potential customers in Arizona and throughout the United States.

## False and Misleading Statements

34.     Regenexx, Centeno and Conliffe aggressively market the products and/or services offered by Regenexx and Conliffe through their internet websites, through Facebook and other social media, through the personal blog posts of Centeno, and through other advertising media, speaking engagements, personal appearances, direct mail/email correspondence and other forms of direct and indirect marketing.

35.     The primary nature of the marketing done by Regenexx and Centeno is to aggressively attack the products and services of competitors, including Plaintiff, making disparaging claims, unfavorable comparisons, and damaging allegations, not only about the products and services of the competitors, but also as to the integrity, honesty and personal attributes of the competitors' owners, employees and representatives.

36.     In their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly likened Surgenex sales representatives to "used-car salesmen," have falsely alleged that Surgenex "misleads patients in the worst possible way," and have falsely alleged that use of Surgenex' products is "serious safety concern!"

37.     Each of these statements is wholly untrue, and further, these statements are false and disparaging of not only Plaintiff's products, but also of Plaintiff's integrity, character, and business practices.

38.     In their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly asserted that Plaintiff's product was "birth waste."  This statement is wholly untrue, and is false and disparaging of Plaintiff's products.

39.     In their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly asserted that Plaintiff's product is made from amniotic fluid.

40.     Because Plaintiff's product is actually derived solely from the amniotic membrane layer, not from amniotic fluid, a highly important distinction that is relevant to the quality of Plaintiff's product and to the allegations made by Defendants about Plaintiff's product, Defendants' statements to the contrary are wholly untrue.

41.    A reasonable consumer reviewing Defendants' marketing materials would be caused to believe that Plaintiff's product is derived from amniotic fluid.

42.    Further, elsewhere in their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly asserted that amniotic fluid "is mostly baby piss," and then assert that their competitors' products, which are falsely alleged to be derived from amniotic fluid, are "bottled baby piss."

43.    Because Plaintiff's product is not derived from amniotic fluid, Defendants' statements associating their competitors' products with "baby piss" are wholly untrue.

44.    A reasonable consumer reviewing Defendants' marketing materials would be caused to believe that Plaintiff's product is derived from a substance that "is mostly baby piss."

45.    In their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly asserted that Plaintiff's product application is via IV (intravenous) injection.

46.    Because Plaintiff does not market or recommend its product for IV injection, Defendants' statements are wholly untrue.

47.    A reasonable consumer reviewing Defendants' marketing materials would be caused to believe that Plaintiff's product is intended for IV injection.

48.    In their advertising and promotional materials, including their websites and Facebook pages, Regenexx and Centeno have directly and repeatedly asserted that Plaintiff's product contains no viable or healthy stem cells, and that cultures from Plaintiff's products when tested contained no living cells at all.

11

49.     The above claims have been repeated in a blog post called "The Amniotic Stem Cells Challenge," in one entitled "Stem Cell Institute of America Review:  Chiropractic Amniotic Bait and Switch," in one called "An Amniotic 'Stem Cell' Sales Call by Surgenex," and in one called "Is an Amniotic Stem Cell Treatment Really Just a Baby Piss Shot?"  These blog posts from the Regenexx website are attached hereto as Exhibits A, B, C and D.

50.     Defendants state, or at least infer, that their allegations Plaintiff's product contains no viable or healthy stem cells, and that cultures from Plaintiff's products when tested contained no living cells at all, are both based upon a "flow-cytometry" test conducted on Plaintiff's product SurForce.

51.     However, based upon the only "study" offered by Defendants, the only such tests that have been conducted were done exclusively on the products of other competitors, and not on SurForce.  (*See* In Vitro Evaluation of Injectable, Placental Tissue-Derived Products for Interventional Orthopedics, attached hereto as Exhibit E.)  As such, any allegation or inference that Plaintiff's product has been directly tested is, upon information and belief, wholly untrue.

52.     Furthermore, even if Defendants had actually tested Plaintiff's product, the testing procedure used by IOF is inaccurate and inappropriate, resulting in the killing of any living cells by the very process used in their testing.  In other words, the finding of no living cells would have been directly caused by IOF's own testing procedure, and in no way reflects any accurate or relevant information about the products tested.  As such, any allegation that Plaintiff's product contains no viable or healthy stem cells are wholly false.

53.     A reasonable consumer reviewing Defendants' marketing materials would be caused to believe that Defendants had actually had independent, unbiased, reliable

12

scientific tests conducted on Plaintiff's products, and that those tests had demonstrated that Plaintiff's product contained no viable or healthy cells.

54.     Regenexx and Centeno frequently allege that their attacks on competitors are supported or corroborated by what they falsely characterize as independent, unbiased, and objective "testing" or research done by "research scientists at the Interventional Orthopedics Foundation" (Defendant IOF).

55.     Upon information and belief, any "testing" or "research" done by IOF is actually done by unqualified personnel and employees or representatives of Regenexx or Centeno, but is falsely and deceptively represented as objective and reliable scientific evidence by Defendants.

56.     Not surprisingly, the "testing" and "research" allegedly conducted by "research scientists" at IOF invariably concludes that the products offered by competitors of Regenexx are ineffective, inferior, mislabeled, misrepresented or even unsafe to use, in each case directly inferring that the products and services offered by Regenexx are superior.

57.     The claims of Defendants' about the nature of IOF and the services it performs are false and misleading.  Defendants publish their false and deceptive statements about IOF and its "testing" on their websites, Facebook pages and other online locations, all of which are accessible to customers and potential customers in Arizona and throughout the United States.  Defendants also publish their false and deceptive statements about IOF and its "testing" via other forms of direct and indirect advertising distributed to consumers throughout the United States.

58.     Because of the false and deceptive statements about IOF and its "testing," a reasonable consumer reviewing Defendants' marketing materials would be

13

caused to believe that the "testing" and "research" was objective and unbiased and was produced by independent "research scientists" unaffiliated with Regenexx or Centeno.

**Fraudulent Call and Recording**

59.    Sometime in late 2016 or early 2017, Regenexx and Centeno conspired with Conliffe to make a fraudulent and deceptive phone call to a sales representative of Plaintiff.

60.    Conliffe placed the call falsely claiming to be a potential client of Plaintiff, and intentionally mislead the sales representative into a conversation based upon these false pretenses.  Conliffe further asked questions intentionally aimed at eliciting certain statements by Plaintiff's representative that Conliffe knew would be presented in a misleading way.

61.    Conliffe further recorded the call without the knowledge or consent of the other party to the call, which upon information and belief was in violation of state statutes regarding secret recording of multiple-party conversations.

62.    Regenexx and Centeno admit to having orchestrated and directed the phone call, with Centeno stating in a blog post published on the Regenexx website that "I first made sure that the physician [Conliffe] recorded the call. . . ."

63.    Conliffe then provided a recording of the call to Regenexx and Centeno.

64.    Regenexx and Centeno then took misleading and incomplete portions of the call (admitting having removed approximately twenty-four minutes of a thirty-minute call) and posted them to the Regenexx website, both as an incomplete audio recording and also as written snippets coupled with the commentary of Centeno.

65.    Regenexx and Centeno even admit to having edited out the questions being asked, leaving a grossly incomplete and inaccurate presentation of the call.

14

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

66.    In an attempt to alleviate the obvious concerns raised by the heavy editing of the phone call, Regenexx and Centeno make an empty promise, at the very bottom of the page, to provide a more complete (but still heavily edited) recording of conversation to anyone who requests it, knowing full well that it is extraordinarily unlikely that any person will even see that promise at the bottom of the page, much less actually follow through with making such a request.  Further, even in that offer Regenexx and Centeno indicate that they will refuse to provide the questions being asked as part of the recording, citing the need to "protect the identity" of the person making the fraudulent call, an implicit admission of the impropriety of the call.

67.    In the accompanying blog post, published to the Regenexx website, Regenexx and Centeno assert that Plaintiff and its representatives are "slimy" "hucksters advertising all sorts of stuff that's not remotely true."

68.    In the accompanying blog post, published to the Regenexx website, Regenexx and Centeno make the false and deceptive claims set forth in the previous section of this Complaint.

### Tortious Interference

69.    In addition to the conduct asserted above, all of which serves to interfere with the prospective economic advantage of Plaintiff, upon information and belief, Regenexx and Centeno have also engaged in conduct that directly interfered with Plaintiff's prospective economic advantage.

70.    Many of Plaintiff's customers and potential customers seek financing through various financing companies and banks in order to purchase Plaintiff's products.

71.    Upon information and belief, Regenexx and Centeno have directly conducted such financing companies and banks and have repeated the false and deceptive claims set forth above about Plaintiff's products to these third parties.

72.    The statements made by Regenexx and Centeno, as set forth above, are wholly untrue.

73.    Because of these false and deceptive statements by Regenexx and Centeno to these financing companies and banks, some of the financing companies and banks have indicated that they are considering taking the extreme step of refusing to provide financing for Plaintiff's products to Plaintiff's customers and potential customers.

74.    As such, by interfering with Plaintiff's customers' and potential customers' ability to obtain financing to purchase Plaintiff's products, Regenexx and Centeno have, upon information and belief, interfered with Plaintiff's prospective economic advantage.

**Results of Defendants' Wrongful Conduct**

75.    Defendants' published their false and deceptive statements in advertising, marketing and promotion in the United States.

76.    Defendants' published statements have disparaged and diminished the business of Plaintiff and caused confusion in the marketplace for Plaintiff's products in the United States.

77.    Plaintiff has received and had to respond to inquiries from customers and others about Defendants' false and misleading statements.  By way of example, and not limitation, (a) a third-party alerted Plaintiff of the false and misleading communication; (b) one or more customers wrote to Plaintiff inquiring as to the veracity of the false and misleading communication; and (c) a third party has informed

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

Plaintiff that a lending bank is considering refusing to finance future purchases of Plaintiff's product directly due to the false and misleading communications by Defendants.

78. Defendants' false and misleading statements have adversely affected the ability of Plaintiff to compete and have detracted from its reputation or goodwill in a fashion that benefitted Defendants. Plaintiff's customers and potential customers were aware of Defendants' statements when they were made and were influenced by them to buy products from Defendants or Plaintiff's other competitors, rather than from Plaintiff. Defendants' statements had direct effects on Plaintiff and the market in which it participates.

79. Defendants' deceptions were material and likely to influence purchasing decisions. Purchasers made decisions that were or may have been influenced by Defendants' statements. Defendants certainly made their statements to the market for the purpose of influencing purchase decisions.

80. U.S. customers for Plaintiff's products would read Defendants' statements and would likely be confused as to the nature of Plaintiff's products and buy related products or services from Defendants. Plaintiff's customers and potential customers were likely aware of the statements and influenced by them to buy Defendants' products and services instead of Plaintiff's.

81. Sales of products and services offered by Defendants as a result of its false and misleading statements cause Plaintiff to lose sales, in an amount to be proven at trial.

82. The documents referred to herein are incorporated by reference.

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX (602) 274-4401

### The Copyrights

83.    Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to certain images and works of visual art.

84.    The images and visual art contain wholly original material that is copyrightable subject matter under the laws of the United States.

85.    Plaintiff has applied for a certificate of copyright registration from the United States Copyright Office for two different works.  The Ninth Circuit has joined the Fifth and Seventh Circuits in holding that the filing of an application for copyright is sufficient to proceed in an action for infringement under § 411(a).  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 619 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 686, 178 L. Ed. 2d 479 (U.S. 2010).  Copies of Plaintiff's applications are attached hereto as Exhibits F and G.

86.    Under the Copyright Act, Plaintiff is the proprietor of all right, title, and interest in the images and visual art, including the right to sue for past infringement.

87.    Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted works and to distribute the copyrighted works to the public.

88.    The images and visual art at issue were displayed on Plaintiff's website, from which Defendant directly copied them, in a manner that would have provided an ordinary individual notice that the images and visual art were the property of Plaintiff and were protected by the copyright laws.

89.    The website from which the images were directly copied by Defendants contains a copyright notice advising the viewer that the content of the site is protected by the copyright laws.

18

**Infringement**

90.   Defendants, without Plaintiff's authorization or license, intentionally copied images and visual art from Plaintiff's website, purposefully loaded those images and visual art onto their own websites and other publications, and reproduced and distributed the images and visual art, including the protected elements, to numerous third parties. *See* Exhibits A and C.

91.   The copyrighted image and visual art from Plaintiff's home page, containing Plaintiff's company name and product packaging, was and remains displayed by Defendants on the blog post entitled "An Amniotic 'Stem Cell' Sales Call by Surgenex," which post is reproduced on Regenexx' website and Facebook page, as well as elsewhere, upon information and belief. *See* Exhibit C.

92.   The copyrighted material from Plaintiff's marketing brochure was and remains displayed by Defendants on the blog posts entitled "The Amniotic Stem Cells Challenge" and "Stem Cell Institute of America Review: Chiropractic Amniotic Bait and Switch," which posts are reproduced on Regenexx' website and Facebook page, as well as elsewhere, upon information and belief. *See* Exhibits B and C.

## COUNT I
### (Federal Unfair Competition - Lanham Act § 43(a))

93.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

94.   Plaintiff's and Defendants' products and services are used, sold, and/or offered for sale in interstate and foreign commerce.

95.   In connection with its goods or services; Defendants have used one or more words, terms, names, symbols, or devices, alone or in combination, as well as false designations of origin, false or misleading descriptions or representations of fact, which are in commercial advertising or promotion (including without limitation its

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

website, promotional materials, emails and in trade publications), and Defendants misrepresent the nature, characteristics, qualities, or geographic origin of their or Plaintiff's goods, services, or commercial activities.

96.     Defendants knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

97.     Defendants' commercial messages and statements are either literally false or literally true but ambiguous and deceived or have the tendency to deceive the intended audience, the market, the public, consumers, potential consumers and competitors of Plaintiff and its customers.

98.     Defendants' misrepresentations were material and made in bad faith for the purpose of deceiving the market, the public, consumers, potential consumers and competitors of Plaintiff and harming Defendants' competition, including Plaintiff.

99.     The misrepresentations deceive or are likely to deceive the market, the public, consumers, potential consumers and competitors of Plaintiff's and Defendants' products and/or services.  Further, the misrepresentations are likely to influence the purchasing decisions of others, including potential customers of Plaintiff, and have caused injury or are likely to do so.

100.    The deceptive misrepresentations were published via Defendants' websites, Facebook pages, blogs and in other widely distributed media in and throughout Arizona and the rest of the United States, and were thereby placed into interstate commerce.

101.    By reason of Defendants' statements and conduct, Defendants have willfully violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits Defendants from using false, misleading, or disparaging representations of fact that

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

misrepresent the nature, characteristics, or qualities of its own or Plaintiff's products and/or services.

102.    Plaintiff has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Defendants' acts.

103.    Plaintiff has been irreparably harmed by Defendants' acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

104.    Plaintiff has no adequate remedy at law.

## COUNT II
### (Arizona Unfair and Deceptive Acts and Practices)

105.    Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    In connection with the misrepresentations alleged above, Defendants have knowingly made false and misleading statements and have omitted statements of material fact to the public in violation of section 43(a) of the Lanham Act and section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1).

107.    At all relevant times, Arizona's Consumer Fraud Act ("CFA"), A.R.S. § 44-1521, *et seq.*, was in full force and effect and applicable to at least Defendants Regenexx and Centeno, a company and person doing business in and directing activities to Arizona, both of which made false and misleading statements about Plaintiff, an Arizona company.

108.    It was the stated intent of the Arizona legislature that guidance be taken from the above federal statutes in interpreting the CFA.

109.    The CFA creates in implied private right of action for damages. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974).

110.   Defendants violated the CFA by engaging in deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, misrepresentations, or concealment, suppression or omission of material facts by engaging in the conduct alleged above.

111.   Plaintiff has been personally aggrieved by Defendants' unlawful business acts and practices as alleged herein, including but not necessarily limited to the loss of money or property.

112.   Defendant should be preliminarily and permanently enjoined from further violation of the law pursuant to A.R.S. § 44-1528.

113.   As a result of the CFA violation, Defendants should be ordered to disgorge the profits they received as the result of their conduct, in an amount to be proven at trial, pursuant to A.R.S. § 44-1528(A)(3).

## COUNT III
### (Common Law Unfair Competition)

114.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.   Defendants' false and misleading representations and omissions detailed herein, and the resulting damage to Plaintiffs, are actionable under the applicable common law tort of unfair competition based on Defendants' conduct of falsely advertising and promoting the composition of Plaintiff's product, by falsely advertising and promoting the efficacy of Plaintiff's product, and by the other false or misleading representations set forth above.

## COUNT IV
### (Defamation/Trade Libel)

116.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

22

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive. SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 271-4401

117.   In connection with its misrepresentations alleged above, Defendants have knowingly made false and disparaging statements in internet communications about Plaintiff's products and/or services.

118.   For example, Defendants' statements that Plaintiff's products are made from amniotic fluid, are "baby piss," and contain no living cells, among others, are false and untrue, and defamed Plaintiff.

119.   By publishing the statements on their webpage, on their blog and on Facebook, among other places, Defendants published defamatory statements to a wide range of persons in the public via the Internet.

120.   By making their statements to finance companies and banks, Defendants published the defamatory statements to at least one other person directly.

121.   Defendants negligently or intentionally published the false and defamatory statements about Plaintiff, causing Plaintiff to suffer damages, including the monetary loss of clients or potential clients, and injury to Plaintiff's reputation.

122.   Defendants published the false and defamatory statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

123.   Defendants' conduct was intentional, malicious, and willful and was done with knowledge that harm would inevitably result.

124.   As a direct and proximate result of Defendants' false and defamatory statements, Plaintiff has been irreparably harmed, and, if not enjoined, Plaintiff will continue to suffer irreparable harm and damages to its business, reputation, and goodwill.   Defendants' misrepresentations to current and potential customers of Plaintiff are already limiting Plaintiff's business effectiveness.   These misrepresentations caused and continue to cause special damages relating to current

and potential customers believing the misrepresentations and preventing Plaintiff from forming relationships.  Plaintiff is also suffering monetary damage in an amount to be proven at trial.

## COUNT V
### (Commercial Disparagement)

125.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.   Defendants' statements that Plaintiff's products are made from amniotic fluid, are "baby piss," and contain no living cells, among others, are false and untrue, and disparaged Plaintiff's product, SurForce.

127.   By publishing the statements on their webpage, on their blog and on Facebook, among other places, Defendants published disparaging statements to a wide range of persons in the public via the Internet.

128.   By making their statements to finance companies and banks, Defendants published the disparaging statements to at least one other person directly.

129.   Defendants negligently or intentionally published the false and disparaging statements concerning Plaintiff, causing customers or potential customers to regard SurForce as ineffective, harmful and falsely marketed, and imputing deceit, dishonesty and reprehensible conduct to Plaintiff.

130.   Defendants knew or by the exercise of reasonable care should have known that the statements were false.

131.   Defendants published the false and disparaging statements about SurForce, causing Plaintiff to suffer special and general damages, including the monetary loss of clients or potential clients, and injury to the reputation of SurForce and Plaintiff.

24

132.   As a direct and proximate result of Defendants' false and disparaging statements, Plaintiff has been irreparably harmed, and, if not enjoined, Plaintiff will continue to suffer irreparable harm and damages to its business, reputation, and goodwill.  Plaintiff is also suffering monetary damage in an amount to be proven at trial.

## COUNT VI
### (Intentional Interference with Prospective Economic Advantage)

133.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

134.   Plaintiff has economic relationships with its customers, through the sales and supply of its products throughout the United States.

135.   Plaintiff's customers have economic relationships with specialized finance companies and banks, upon which they rely for funding in order to make purchases of Plaintiff's products.

136.   In connection with its misrepresentations alleged above, Defendants have knowingly and intentionally made false and misleading statements designed to disrupt Plaintiff's economic relationships with its customers and induce them not to do business with Plaintiff.

137.   Further, in connection with its misrepresentations alleged above, Defendants have knowingly and intentionally made false and misleading statements designed to disrupt Plaintiff's customers' ability to secure funding for the purchase of Plaintiff's products, thereby disrupting Plaintiff's economic relationships with its customers by blocking their ability to do business with Plaintiff.

138.   The misrepresentations have influenced the purchasing decisions of customers and potential customers, as well as the lending decisions of finance

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 271-4401

companies and banks, and have caused Plaintiff to suffer damages in an amount to be determined at trial.

## COUNT VII
### (Infringement of Copyrights)

139.   Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

140.   Defendants' conduct infringes upon Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

141.   The website displaying the images and visual art contains a copyright notice advising the viewer that the images and visual art on the site are protected by the copyright laws.

142.   Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

143.   Defendants' conduct was willful within the meaning of the Copyright Act, namely, it was intentional and with indifference to the Plaintiff's rights.

144.   Plaintiff has been damaged by Defendants' conduct, including, but not limited to, economic and reputation losses.  Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendants' conduct.

145.   Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

146.   As Defendants' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

26

147.   The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright and ordering that each Defendant destroy all copies of copyrighted images and visual art made in violation of Plaintiff's copyrights.

## REQUEST FOR JURY TRIAL

148.   Plaintiff hereby demands that this cause be tried by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

A.   The entry of judgment in favor of Plaintiff and against Defendants;

B.   That Defendants be adjudged to have violated the Lanham Act section 43(a), 15 U.S.C. § 1125(a), by false advertising and unfairly competing against Plaintiffs by using false, deceptive or misleading statements and/or omissions of fact that misrepresent the nature, quality and characteristics of their and Plaintiff's products and/or services;

C.   For judgment that Defendants have violated Arizona's laws of unfair and deceptive acts and practices;

D.   For disgorgement of profit under the CFA;

E.   That Defendants be adjudged to have violated the applicable common law standards relating to unfair competition, fair trade, passing off and truthful advertising by misrepresenting their own products and services and those of Plaintiff, harming Plaintiffs and deceiving purchasers;

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

F.   That Defendants, their agents, officers, directors, employees, servants, attorneys, privies, successors and assigns, and all holding by, through or under Defendants, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, be enjoined and restrained, immediately and preliminarily, during the pendency of this action and permanently thereafter from continued violations of the Lanham Act and Arizona's CFA, including enjoining further false and misleading statements, and requiring corrective disclosures;

G.   That Plaintiffs be awarded damages sustained in consequence of Defendants' false advertising and unfair competition;

H.   That Plaintiffs be awarded each Defendant's profits obtained as a consequence of false statements, omissions and deceptive conduct;

I.   That such damages and profits for false advertising and unfair competition be trebled and awarded to Plaintiffs as a result of each Defendant's willful, intentional, and deliberate acts in violation of Lanham Act Section 43(a);

J.   That Defendants be ordered to initiate corrective advertising on each website, blog or social media site, and that within thirty (30) days of issuance each Defendant be ordered to file and serve a report under oath setting forth in detail the manner and form in which such Defendant has complied with the Court's injunction as per 15 U.S.C. § 1116(a);

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 271-4401

K.   That Plaintiff recover punitive damages for Defendants' violation of applicable common law standards relating to unfair competition, fair trade, passing off and truthful advertising;

L.   For judgment that Defendants committed trade libel, defamation and commercial disparagement;

M.   For judgment that Defendants committed tortious interference with prospective economic relationships;

N.   For judgment that Defendants infringed upon the valid copyrights on Plaintiff's protected works;

O.   For a permanent injunction prohibiting further copyright infringement, false advertising and unfair competition by Defendants and each of their subsidiaries, successors, parents, affiliates, officers, directors, agents, servants, employees and all persons in active concert or participation with any of them, and requiring each Defendant to destroy all copies of Plaintiff's works that each Defendant has downloaded onto any computer hard drive, server, or other storage medium without Plaintiff's authorization, and to destroy all copies of those downloaded images transferred onto any physical medium or device in each Defendant's possession, custody, or control;

P.   For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff;

Q.   For an order of impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's images or other materials that are in Defendants' possession or under their control;

29

R.      That Plaintiffs be granted prejudgment and post judgment interest;

S.      For Plaintiff's costs, pursuant to Fed. R. Civ. P. 54(d) or otherwise provided by law;

T.      For Plaintiff s reasonable attorneys' fees as allowed by law, including without limitation,  15 U.S.C. § l 1l 7(a); and

U.      For such other and further relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 24th day of July 2017.

ISRAEL & GERITY, PLLC


By: /s/Michael Gerity
    Michael Gerity
    Israel & Gerity, PLLC
    202 East Earll Drive, Suite 440
    Phoenix, Arizona 85012

Attorneys for Plaintiff

ISRAEL & GERITY, P.L.L.C.
202 East Earll Drive, SUITE 440
PHOENIX, ARIZONA 85012
(602) 274-4400 / FAX: (602) 274-4401

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of July 2017, I electronically transmitted Plaintiff's Complaint and Jury Demand using the CM/ECF system for filing.  There are no CM/ECF registrants at this time.

DATED this 24th day of July 2017.

ISRAEL & GERITY, PLLC

By:  /s/Michael Gerity
      Michael Gerity
      Israel & Gerity, PLLC
      202 East Earll Drive, Suite 440
      Phoenix, Arizona 85012

31